Matthew L. Lalli (6105)
Annika L. Jones (16483)
**SNELL & WILMER LLP**
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone:    (801) 257-1900
Facsimile:     (801) 257-1800
mlalli@swlaw.com
aljones@swlaw.com

Kimberly O. Branscome (*pro hac vice to be filed*)
Jonathan Tam (*pro hac vice to be filed*)
Matthew P. Steinberg (*pro hac vice to be filed*)
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
2029 Century Park East
Los Angeles, CA 90067-3006
Telephone:    (310) 982-4350
Facsimile:     (310) 943-1770
kbranscome@paulweiss.com
jtam@paulweiss.com
msteinberg@paulweiss.com

*Attorneys for Plaintiff Snap Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| SNAP INC., a Delaware corporation,<br><br>                                        Plaintiff,<br><br>     v.<br><br>DEREK E. BROWN, in his official capacity as Attorney General of Utah,<br><br>KATHERINE HASS, in her official capacity as Director of the Division of Consumer Protection of the Utah Department of Commerce,<br><br>                                        Defendants. | **ORDER GRANTING MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>**Case No.   2:25-cv-490**<br><br>**Judge        Jill N. Parrish** |

1

The Court, having considered Plaintiff Snap Inc.'s ("Snap" or "Plaintiff") Motion for An *Ex Parte* Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (the "Motion") and its accompanying papers, hereby **FINDS** and **ORDERS** as follows:

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because it arises out of claims under the First and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. §§ 1983 and 1988, and Section 230.[1]

2. This Court has personal jurisdiction over Defendant Derek E. Brown in his official capacity as the Attorney General of Utah and Defendant Katherine Hass in her official capacity as Director of the Division of Consumer Protection of the Utah Department of Commerce (together, "Defendants). because they both reside in and/or conduct a substantial proportion of their official business in Utah.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this District.

4. This Court has authority to grant legal and equitable relief under its own legal and equitable powers as well as 42 U.S.C. § 1983, in addition to the authority to grant injunctive relief under 28 U.S.C. § 1651 and declaratory relief under 28 U.S.C. §§ 2201 and 2202.

5. Under Federal Rule of Civil Procedure Rule 65(b), a court may issue a temporary restraining order without notice to the adverse party only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result

---

[1] This Court also has supplemental jurisdiction over any state law claims derived from a common nucleus of operative fact. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025).

to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).[2] In the Tenth Circuit, the standard given in Rule 65 has been interpreted as a four-element test, and therefore this Court may issue a temporary restraining order when the movant establishes the following four elements: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the [temporary restraining order] is used; (3) that the threatened injury outweighs the harm that the [temporary restraining order] may cause the opposing party; and (4) that the [temporary restraining order], if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).[3] A temporary restraining order is an extraordinary remedy that may be awarded only if the right to relief is "clear and unequivocal." *Id.*

6. A "movant's burden is greater when the requested injunction is 'mandatory' rather than 'prohibitory.'" *Trial Law. Coll. v. Gerry Spence Trial Law. Coll. at Thunderhead Ranch*, 23 F.4th, 1262, 1274 (10th Cir. 2022) (citation omitted). Preliminary injunctions are typically prohibitory in the sense they prohibit the defendant from doing something. *Id.* (citation omitted). Mandatory injunctions, on the other hand, affirmatively require action. *Id.* (citation omitted).

---

[2] *See also* 28 U.S.C. § 1746 ("Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration … or affidavit, in writing of the person making the same … such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration … in writing of such person which is subscribed by him, as true under penalty of perjury, and dated….").

[3] The standard for granting a TRO is identical to the standard for granting a preliminary injunction. *Nunez v. Nunez*, 2013 WL 5230614, at *2 (D. Utah 2013) (unpublished).

7. Here, Plaintiff only seeks a prohibitory injunction, and Plaintiff has demonstrated that each prong of the Tenth Circuit's framework governing temporary restraining orders is met, including by setting forth specific facts in a declaration under penalty of perjury showing that that immediate and irreparable injury, loss, or damage will result to Plaintiff before Defendants can be heard in opposition. Moreover, Plaintiff certifies in its Motion why notice should not be required, and the Court credits the reasons set forth therein. Therefore, Plaintiff is entitled to an *ex parte* temporary restraining order.

**A.      Likelihood Of Success**

8. "Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims," *RoDa Drilling Co. v. Siegal*, 2008 WL 4056229, at *5 (N.D. Okla. Aug. 11, 2008) (citation omitted); however, "[i]f the moving party is likely to succeed on each of several theories, the party's argument for preliminary relief is stronger than if the party has only one claim that is likely to be viable," *see Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1267 (10th Cir. 2024). For the following reasons, Plaintiff is likely to succeed on the merits of the claims giving rise to its requested relief, which shows that Plaintiff has a strong argument for its requested preliminary relief.

9. *First*, Plaintiff is likely to succeed on its First and Fourteenth Amendment claims. As incorporated against the States, the First Amendment's Free Speech and Free Press Clauses provide that governments "shall make no Law. . . abridging the Freedom of Speech or of the Press." *See* U.S. Const. amend. I.  The many protections that the First Amendment provides also apply to social media companies. *See generally Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938) (the

"press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion"). In the context of social media companies, such protections most often extend to "the speech [they] engage in when they make decisions about how to construct and operate their platforms." *See NetChoice v. Reyes*, 748 F. Supp. 3d 1105, 1120 (D. Utah 2024); *see also Moody v. NetChoice, LLC*, 603 U.S. 707, 716 (2024) (underscoring that social media companies "mak[ing] choices about what third-party speech to display and how to display it" is protected by the First Amendment).

10. Here, Defendants have threatened and confirmed that they will bring an imminent civil action against Plaintiff, which will strip away Plaintiff's—and its current and prospective users'—First Amendment rights. As set forth in the Attorney General's Enforcement Letter, he believes, among other things, that: (i) "parents of underage users [must be] given [an] opportunity to affirmatively consent to use of" Snapchat; (ii) Snapchat has "inadequate age gate and deficient guardrails" to prevent access by those under the age of thirteen; and (iii) interactions with a generative artificial intelligence feature within Snapchat are problematic. Defendants have filed similarly styled actions against other social media companies, where they take issue with, *inter alia*, age verification processes, age "appropriate" content, certain application-specific features, and certain representations by the social media companies about whether their applications are safe. *See, e.g.*, Notice of Filing of Unsealed Complaint, *Utah Div. of Consumer Protection v. Meta Platforms, Inc.*, No. 230908060 (3d Judicial Dist. Ct. Nov. 27, 2023); Complaint and Jury Demand, *Utah Div. of Consumer Protection v. TikTok Inc.*, No. 240904292 (3d Judicial Dist. Ct. June 3, 2024).

11. However, by asserting that Snapchat has legally insufficient age verification and age gating, such that Plaintiff cannot avoid civil liability unless it implements a verifiable parental consent feature that pops up prior to accessing Snapchat, Defendants are attempting "[t]o condition the exercise of First Amendment rights on the willingness of an adult to chaperone." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1064 (7th Cir. 2004). It is black letter law that this is unconstitutional. *See id.*; *see also Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 802 (2011) ("[P]unishing third parties for conveying protected speech to children *just in case* their parents disapprove of that speech" is not "a proper governmental means of aiding parental authority.").

12. Relatedly, by asserting that Snapchat has legally insufficient age verification and age gating, such that Plaintiff cannot avoid civil liability unless it implements more stringent measures that will also deter legal use of Snapchat, Defendants are "barring access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." *See Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). This is particularly problematic because it impacts both adults and teenagers. *See Am. C.L. Union v. Johnson*, 4 F. Supp. 2d 1029, 1033 (D.N.M. 1998) (holding that mandatory age verification "violates the First and Fourteenth Amendments of the United States Constitution because it prevents people from communicating and accessing information anonymously"), *aff'd*, 194 F.3d 1149 (10th Cir. 1999).

13. By curtailing how and when users can access Snapchat—as well as the content users see when accessing Snapchat—Defendants are unconstitutionally impeding Snapchat users' First Amendment right to "peaceably assemble" to engage in otherwise lawful speech activities

with whomever they choose, *see Thomas v. Collins*, 323 U.S. 516, 530-40 (1945), given that social-media applications like Snapchat have become the "modern public square," *see Packingham*, 582 U.S. at 107.

14. By taking issue with information generated during user interactions with My AI, Defendants are seeking to impose liability in contravention of the First Amendment. It is well settled that "the creation and dissemination of information are speech for First Amendment purposes," *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 553 (2011); *see also Brown*, 564 U.S. at 790, such that the curation of training data for—and post-training interventions to directly engineer the behavior of—a generative artificial intelligence tool engender First Amendment protections for that tool's speech, *see Moody*, 603 U.S. at 729-30; *see also Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 181 (D. Conn. 2002).

15. These separate, but in some cases related, reasons show that Defendants' threat of an imminent civil enforcement action strikes at the heart of the First Amendment—and that Plaintiff is substantially likely to prevail in vindicating both its own rights and the rights of its current and prospective users.

16. **Second**, Plaintiff is likely to succeed on its claim that its conduct is immunized under Section 230.

17. As courts have recognized, Plaintiff is a "provider" of an "interactive computer service" within the meaning of 47 U.S.C. §§ 230(c)(l) and 230(t)(2). *See, e.g.*, *L.W. v. Snap Inc.*, 675 F. Supp. 3d 1087, 1095 (S.D. Cal. 2023); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 825 (N.D. Cal. 2023).

18. Defendants' pursuit of Plaintiff and threat of an imminent civil lawsuit invariably treats Plaintiff as a "publisher or speaker" of content, as it turns on Plaintiff making content available to Utahans through the operation of Snapchat. *See Doe v. Grindr Inc.*, 128 F.4th 1148, 1151 (9th Cir. 2025) (citation omitted)); *accord Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000).

19. As noted, Defendants are threatening to impose imminent liability here because they fundamentally disagree with who can access Snapchat—and how they can go about doing so—as well as the content displayed when accessing Snapchat. This falls squarely within Snap's core function as a publisher or speaker of third-party content. Indeed, courts routinely recognize that Section 230 immunizes communication services from claims related to specific features—like ephemeral messaging, recommendation algorithms, and reward systems—and also prevents attempts to recast those claims as sounding in a failure-to-warn or a misrepresentation. *See, e.g.*, *Grindr Inc.*, 128 F.4th at 1154; *M.P. v. Meta Platforms Inc.*, 127 F.4th 516, 526 (4th Cir. 2025); *Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016); *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1065 (N.D. Cal. 2025); *L.W.*, 675 F. Supp. 3d at 1095-96; *Doe v. Snap, Inc.*, 2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022) (unpublished), *aff'd*, 2023 WL 4174061 (5th Cir. June 26, 2023).

20. ***Third***, and for similar reasons, Plaintiff is likely to succeed on its claim for declaratory judgment. The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "Basically, the question in each [DJA] case is whether ... there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Initiative & Referendum Inst. v. Walker*, 161 F. Supp. 2d 1307, 1311 (D. Utah 2001).

21. Here again, there is clearly a real and ongoing controversy regarding the parties' legal interests and duties, given the parties' interactions and credible threat of imminent civil litigation.

22. Plaintiff is likely to succeed on its claims for a declaratory judgment as to Section 230 and the First Amendment for the reasons articulated above. Plaintiff is also likely to succeed on its claims for declaratory judgment as to COPPA, as Snapchat is not directed at children and Plaintiff does not have actual knowledge that it is in possession of minors' data. *Cf. N.M. ex rel. Balderas v. Tiny Lab Prods.*, 516 F. Supp. 3d 1293, 1299 (D.N.M. 2021). Plaintiff provides a neutral age gate in line with industry standards—and guidance from the Federal Trade Commission—that excludes registrants who indicate that they were born on a date that would make them under the age of 13.

**B.  Irreparable Harm**

23. Plaintiff will suffer irreparable harm absent the requested injunctive relief. Demonstration of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th. Cir. 2017) (citation omitted). The movant must demonstrate significant risk that they will experience harm that cannot be compensated after the fact by money damages. *Id.* (citation omitted). For harm to be irreparable, it must be "imminent, certain, actual and not speculative." *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 886 (10th Cir. 2021) (citation omitted).

24. "The loss of First Amendment freedoms" to Plaintiff and its current and prospective users, as outlined above, unquestionably "constitutes irreparable injury" to them. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 806 (10th Cir. 2019). In fact, the loss of First Amendment freedoms is such a significant contravention of fundamental rights that "most courts hold that no further showing of irreparable injury is necessary." *See Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (citation omitted); *see also Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).

25. The "loss of reputation, good will, marketing potential," and customers as a result of Utah's threatened actions "constitutes irreparable injury" as well. *See Lovesac Co. v. www.lovessac.com*, 2022 WL 504192, at *4 (D. Utah Feb. 18, 2022) (unpublished) (collecting authority). The Court credits Plaintiff's assertion, under penalty of perjury, that a lawsuit by the Utah Attorney General's Office and/or the Utah Division of Consumer Protection—even if ultimately found unconstitutional and in violation of federal law—will likely generate press releases and news coverage that harm Snap's reputation, goodwill, and marketing potential. *See* Declaration of Nona Yadegar.

26. The imposition of nonrecoverable compliance costs—including the amount Plaintiff would need to expend to implement the unconstitutional features called for by the State—constitutes an irreparable injury too. *See, e.g.*, *Reyes*, 748 F. Supp. 3d at 1130-31; Declaration of Nona Yadegar; *see also, e.g.*, *Kansas v. United States Dep't of Educ.*, 739 F. Supp. 3d 902, 932 (D. Kan. 2024).

27. Additionally, with respect to claims conflicting with Section 230, "[a] credible threat of imminent prosecution for a state violation that conflicts with federal law can establish a

likelihood of irreparable harm." *KalshiEX, LLC v. Hendrick*, 2025 WL 1073495, at *7 (D. Nev. Apr. 9, 2025) (unpublished) (collecting authority). That is because "[w]hen enforcement actions are imminent," as is the case here, "there is no adequate remedy at law." *Id.*

28. In sum, Plaintiff has demonstrated it will suffer irreparable harm absent the requested relief.

C. **Balance Of Equities**

29. The balance of equities also weighs in favor of Plaintiff. This factor considers "whether [the movant's] threatened injury outweighs the injury the opposing party will suffer under the injunction." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 889 (10th Cir. 2013) (unpublished) (citing *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)). This factor "merge[s]" with the final factor (*i.e.*, the public interest) when "the government is the opposing party." *Utah Vapor Bus. Ass'n Inc. v. Utah*, 2025 WL 1201731 at *8 (D. Utah Mar. 24, 2025) (unpublished).

30. Here, Plaintiff is seeking to vindicate its own First Amendment right to publish—and its current and prospective users' First Amendment right to access—constitutionally protected speech on Snapchat. This undoubtedly serves the public interest, as "it is always in the public interest to prevent the violation of a party's constitutional rights." *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) (quoting *Awad*, 670 F.3d at 1132); *see also Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005) ("Vindicating First Amendment freedoms is clearly in the public interest.").

31. Here, Plaintiff is also seeking to vindicate its own right to immunity under Section 230. This serves the public interest as well, as "it is clear that it would not be equitable or in the

11

public's interest to allow the state ... to violate the requirements of federal law [with conflicting state law], especially when there are no adequate remedies available." *Valle del Sol v. Whiting, Inc.*, 732 F.3d 1006, 1029 (9th Cir. 2013) (citations and internal quotations omitted); *see also KalshiEX*, 2025 WL 1073495, at *7.

\* \* \* \*

32. Accordingly, the Court **ORDERS** that the **DEFENDANTS**, and any officers, employees, agents, servants, employees, attorneys, and other person or entity acting on behalf of the **DEFENDANTS**—collectively or individually—are enjoined and restrained during the pendency of this Order from: filing suit against Snap, or launching a new investigation into Snap, for reasons related to age verification, parental consent, implementation of other safety features, representations (or a lack thereof) about the safety and security of Snapchat for its users, illicit content posted by third parties on Snapchat, information generated during user interactions with My AI, ephemeral messaging, Snap's recommendation algorithm, and/or Snap Streaks.

33. The court directs Plaintiff to serve as soon as practicable (i) this Order; (ii) Plaintiff's Complaint; (iii) Plaintiff's Motion; and (iv) a summons on Defendants in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules of Practice.

34. No bond is required because "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgenson v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003); *see also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) (affirming preliminary injunction without bond and noting "the latitude given to courts in making bond decisions"). Additionally, Plaintiff's Motion "enforces fundamental constitutional rights against the government," and the Court finds that "[w]aiving the security requirement best accomplishes

the purposes of Rule 65(c)." *Utah Drag Stars v. City of St. George*, 677 F.Supp.3d 1252, 1294 (D. Utah 2023) (citation omitted).

35. The Court further **ORDERS** that, within fourteen (14) days of service of this **ORDER**, the **DEFENDANTS** are to show cause—if there is any—as to why a preliminary injunction should not be entered. If Defendants fail to show cause, they shall be preliminarily enjoined for the pendency of this litigation as set forth above.

36. This Order will expire fourteen (14) days from today, unless further extended by the court. *See* Fed. R. Civ. P. 65(b)(2). Based on the sufficiency of Plaintiff's showing, the Court intends to extend the Order for an additional fourteen (14) days unless Defendants appear and file a show cause response that the Court can review and rule on prior to this Order's expiration.

SO ORDERED this _____ day of June 2025, at _____.

BY THE COURT:

_____
Judge Jill N. Parrish
District Court Judge