IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SNAP INC., <br><br> Plaintiff, <br><br> v. <br><br> DEREK E. BROWN and KATHERINE HASS, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Case No. 2:25-cv-00490-JNP <br><br> District Judge Jill N. Parrish |

Plaintiff Snap Inc. has moved ex parte for a temporary restraining order against the Attorney General of Utah, Defendant Derek E. Brown, and the Director of the Division of Consumer Protection of the Utah Department of Commerce, Defendant Katherine Hass, to restrain them from suing Snap for alleged violations of the Utah Consumer Privacy Act. For the reasons below, the court DENIES the motion.

## BACKGROUND

Snap is a social-media company that operates Snapchat, an application (or app for short) that enables users to communicate with family and friends using photos and short videos. The app, designed to mirror the ephemerality of real-life interactions, deletes the pictures and videos once the recipient has viewed them.

On May 22, 2025, the Office of the Attorney General for the State of Utah (Attorney General) sent Snap a letter explaining that it had received complaints about Snap's privacy practices. According to the letter, although Snap represents to Snapchat users that their private

communications will not be shared, those communications in fact have been and continue to be shared with third parties like OpenAI. In the Attorney General's view, these and other practices violate the Utah Consumer Privacy Act, UTAH CODE ANN. § 13-61-402(3)(a). After the letter was sent, the Attorney General informed Snap that his Office was planning to file a civil lawsuit that would include claims under the Utah Consumer Sales Practices Act.

The Utah Consumer Privacy Act requires 30 days' notice before the Attorney General may initiate an enforcement action. Since Snap received the letter on May 22, the earliest day on which the Attorney General could have filed an enforcement action was Saturday, June 21. One day before that safe harbor expired—that is, Friday, June 20—Snap filed an ex parte motion for a temporary restraining order in this court, claiming that the Attorney General's threatened civil enforcement action would violate its rights under the First Amendment to the U.S. Constitution. For support, Snap's motion invokes a case from this district decided last fall, currently on appeal, *NetChoice, LLC v. Reyes*, 748 F. Supp. 3d 1105 (D. Utah 2024), which preliminarily enjoined the Attorney General from enforcing the Utah Minor Protection in Social Media Act of 2024 based on the First Amendment. Attached to Snap's motion is a conclusory declaration from Snap's strategy and operations director stating that a civil action by the Attorney General against Snap would generate news coverage and press releases that would harm its reputation, goodwill, and marketing potential. Snap requests the court to issue injunctive relief as soon as possible, observing that the Attorney General may file an enforcement action any day now.

## ANALYSIS

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah Oct. 9, 2023)

(quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). An ex parte temporary restraining order, meaning one issued without notice to the other side, is even more extraordinary. "[S]uch ex parte relief [is] reserved for circumstances where the applicant would face immediate and irreparable harm if the court waited for the preliminary injunction proceeding," like situations where the adverse party would destroy evidence if given notice of the action against it. *Geiger v. Epsy*, 885 F. Supp. 231, 232 (D. Kan. 1995). To win preliminary relief, a party must show that (1) it "is substantially likely to succeed on the merits"; (2) it "will suffer irreparable injury if the injunction is denied"; (3) its "threatened injury outweighs the injury the opposing party will suffer under the injunction"; and (4) "the injunction would not be adverse to the public interest." *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). Here, the court concludes that Snap has not met "its heightened burden to show it is likely to prevail on the merits and that it would be irreparably harmed if the [temporary restraining order] is denied." *Tickets for Less, LLC v. Cypress Media, LLC*, No. 20-2047, 2020 WL 528449, at *4 (D. Kan. Feb. 3, 2020).

Initially, the court notes that Snap's emergency is entirely self-created. Snap could have filed for emergency relief with notice to the Attorney General immediately after receiving the Attorney General's notice letter back in May. During the one-month safe harbor, the court could have reviewed adversarial briefing and held a hearing on the difficult factual and legal issues presented by Snap's complaint. Yet Snap waited until the last day of the safe-harbor period and now asks the court to rule without the benefit of the adversarial process.

The ex parte nature of Snap's requested relief poses a number of problems for the court. First, the court has little clue what claims, if any, the Attorney General may actually bring under which statutes. Although the notice letter provides some indications, the court is not sure what

exactly it would be enjoining. If Snap had filed its action a month ago, the court could have held a hearing to ask the Attorney General what claims his office was planning on bringing.

Second, Snap's motion presents extremely complex questions of First Amendment law that would be unwise to resolve without adversarial briefing. Needless to say, the complexity of those questions makes it very difficult for the court to conclude at this juncture that Snap has shown a likelihood of success on the merits of its First Amendment claims. (Snap's invocation of the *NetChoice* case does not help much since that case confronted a different statute with a different enactment and enforcement history.)

Snap's claims of irreparable harm also founder, at least on the record before the court. It is difficult to imagine how the mere filing of a civil lawsuit against a party could ever constitute irreparable harm since the sued party would have a due process right to defend the lawsuit and raise any legitimate defenses. In fact, it appears that Snap's claims of irreparable harm are fundamentally based on its concern that, absent emergency relief by this court, the Attorney General's claims against Snap would be litigated in state court and that the state court would necessarily decide the merits incorrectly, resulting in monetary penalties for Snap. But this federal court is no better positioned than a state court to decide the merits, particularly without the benefit of adversarial briefing. In our system of federalism, state courts have concurrent jurisdiction with federal courts over most federal claims, including those arising under the U.S. Constitution. This means both state and federal courts can hear such cases. And, under the Supremacy Clause, state courts are not only permitted but obligated to enforce federal constitutional rights. Moreover, Snap's appeal to its conclusory suggestion that it would be irreparably harmed by press releases and news coverage regarding the filing of a civil lawsuit cannot save its motion. It makes little sense to assume that state-court litigation of the issues presented here would draw unwanted news

attention but federal-court litigation of those issues through this motion for emergency relief would not draw the same sort of attention.[1]

Finally, even assuming that Snap would suffer the harms it claims, the court cannot say that the balance of the harms tips in its favor. The Attorney General surely could name many harms to the public from failing to enforce Utah's duly enacted privacy laws designed to protect its citizens' data and communications.

## CONCLUSION AND ORDER

For the reasons above, Snap's ex parte motion for a temporary restraining order is **DENIED**.

Signed June 23, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[1] Indeed, it appears that Snap's ex parte motion for a temporary restraining order in this court has already generated news coverage. *See, e.g.*, Sorina Trauntvein, *Snapchat Files Lawsuit Against Utah AG Over 'Threats' to Require Age Verification*, ABC4 (June 20, 2025, 8:26PM MDT), https://www.abc4.com/news/top-stories/snapchat-lawsuit-against-utah-social-media.