IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SNAP INC., <br><br>     Plaintiff, <br><br> v. <br><br> DEREK E. BROWN and KATHERINE HASS, <br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS** <br><br><br> Case No. 2:25-cv-00490-JNP <br><br> Chief District Judge Jill N. Parrish |

Defendants Derek E. Brown, in his official capacity as Attorney General of Utah, and Katherine Hass, in her official capacity as Director of the Division of Consumer Protection of the Utah Department of Commerce, filed a motion to dismiss Plaintiff Snap Inc.'s complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, alternatively, for a stay or a more definite statement under Rule 12(e). For the reasons below, the court GRANTS the motion to dismiss.

## BACKGROUND

Snap is a social-media company that operates Snapchat, an application that enables users to communicate with family and friends using photos and short videos. ECF No. 1 ¶¶ 22–23. The app, designed to mirror the ephemerality of real-life interactions, deletes the pictures and videos once the recipient has viewed them. *Id.* ¶ 26. Snapchat also contains a variety of other tools and

features, including photo-editing tools, Snapchat Lens, Stories, and Spotlight.[1] *Id.* ¶¶ 26–30.

Since 2023, NetChoice, a trade association that represents social media and internet companies including Snap, has been in litigation with the State of Utah over recently enacted laws regulating social media platforms. First, the Utah Legislature enacted the Utah Social Media Regulation Act of 2023 (Utah Code §§ 13-63-101, *et seq.*) (the "2023 Social Media Act"). *Id.* ¶ 35. The 2023 Social Media Act established a parental consent requirement for minors to create or access social media accounts, a mandatory age verification system, restrictions on advertising, targeted content, and data collection for minors, time restrictions on when minors could access social media websites, and design requirements for addiction prevention for minors. *Id.*

After the 2023 Social Media Act was enacted, NetChoice filed a lawsuit in this district challenging the Act's constitutionality (the "NetChoice lawsuit"). *Id.* ¶ 36; *see NetChoice, LLC v. Reyes*, 748 F. Supp. 3d 1105 (D. Utah 2024), *appeal filed*, No. 24-4100 (10th Cir. 2024). The NetChoice lawsuit was assigned to the Honorable Robert Shelby. The Utah Legislature thereafter delayed the effective date of the Act and eventually repealed it. ECF No. 1 ¶ 38; *NetChoice*, 748 F. Supp. 3d. at 1113.

The Utah Legislature then enacted the Utah Minor Protection in Social Media Act of 2024 (Utah Code §§ 13-71-101, *et seq.*) (the "2024 Social Media Act"). *Id.* ¶ 40. The 2024 Social Media Act required, inter alia, social media companies to implement "age assurance systems" and established requirements for Utah minors' accounts to which companies must adhere. *Id.* After the 2024 Social Media Act was enacted, NetChoice amended its complaint in the NetChoice lawsuit

---

[1] The Snapchat Lens feature operates similarly to a filter over a photo. *Id.* ¶ 26. The Stories feature allows users to compile photos and videos into a post visible to other users for 24 hours. *Id.* ¶ 29. The Spotlight feature allows users to make videos viewable by any Snapchat user. *Id.* ¶ 30.

alleging that the 2024 Act was also unconstitutional. *Id.* ¶ 41.

On September 10, 2024, Judge Shelby entered an order in the NetChoice lawsuit enjoining the 2024 Social Media Act from taking effect, finding that NetChoice was substantially likely to succeed in arguing "the entire [2024] Act violates the United States Constitution"—specifically, the First Amendment. *NetChoice*, 748 F. Supp. 3d. at 1119.

Separately, in 2023, the Utah Division of Consumer Protection ("DCP") issued a subpoena to Snap in which it asserted it had reason to believe Snap was engaging in an act or practice that violated the Utah Consumer Sales Practices Act (Utah Code §§ 13-11-1, *et seq.*) ("UCSPA"). *Id.* ¶ 45. In early 2025, Snap received a subpoena from the Utah Attorney General's Office, which stated that there was reason to believe Snap was engaging in an act or practice that violated the Children's Online Privacy Protection Act (15 U.S.C. § 6504) ("COPPA"). *Id.* ¶ 47. Snap complied with both subpoenas. *Id.* ¶¶ 46, 48.

On May 22, 2025, the Utah Attorney General sent Snap a Notice of Violation letter explaining that it had received complaints about Snap's privacy practices. *Id.* ¶ 50; ECF No. 1-2 at 2. According to the letter, although Snap represents to Snapchat users that their private communications will not be shared, those communications in fact have been and continue to be shared with third parties like OpenAI. ECF No. 1 ¶ 51. In the Attorney General's view, these and other practices violate the Utah Consumer Privacy Act (Utah Code §§ 13-61-101, *et seq.*) ("UCPA"). *Id.* After the letter was sent, the Utah Attorney General informed Snap that his Office was planning to file a civil lawsuit that would include claims under both the UCPA and UCSPA. *Id.* ¶ 53.

The UCPA requires 30 days' notice before the Attorney General may initiate an enforcement action. *Id.* ¶ 52; Utah Code § 13-61-402(3). Since Snap received the Notice of

Violation letter on May 22, the earliest day on which the Attorney General could have filed an enforcement action was Saturday, June 21. Two days before that safe harbor expired—that is, Thursday, June 19—Snap filed this suit in this district. ECF No. 1. The next day, one day before the safe harbor expired, Snap filed an ex parte motion for a temporary restraining order, claiming that the Attorney General's threatened civil enforcement action would violate its rights under the First Amendment. ECF No. 5. On June 23, this court denied the ex parte motion for a temporary restraining order, noting that it would be unwise for the court to resolve the extremely complex First Amendment claims absent adversarial briefing. ECF No. 12. The court further held that Snap had failed to establish a claim of irreparable harm.[2] *Id.*

On June 30, DCP and the State of Utah sued Snap in the Third Judicial District for the State of Utah, alleging violations of the UCPA and UCSPA. ECF No. 35. On July 10, Snap filed a motion for a preliminary injunction in this court "to preserve the status quo under [the NetChoice lawsuit] and prevent Defendants from circumventing [Judge Shelby's] prior enjoinder of age-verification requirements and age-based restrictions." ECF No. 26 at. 2. Defendants opposed the motion. ECF No. 37.

On August 18, Defendants Derek E. Brown and Katherine Hass filed a motion to dismiss Snap's complaint under the principles of *Younger v. Harris*, 401 U.S. 37 (1971), and because they

---

[2] The court stated: "It is difficult to imagine how the mere filing of a civil lawsuit against a party could ever constitute irreparable harm since the sued party would have a due process right to defend the lawsuit and raise any legitimate defenses. In fact, it appears that Snap's claims of irreparable harm are fundamentally based on its concern that, absent emergency relief by this court, the Attorney General's claims against Snap would be litigated in state court and that the state court would necessarily decide the merits incorrectly, resulting in monetary penalties for Snap. But this federal court is no better positioned than a state court to decide the merits, particularly without the benefit of adversarial briefing." ECF No. 12.

allege Snap's remaining claims are not ripe for adjudication. ECF No. 36 at 1. Defendants alternatively ask the court to stay the matter under the principles of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), or that Snap be required to file a more definite statement under Federal Rule of Civil Procedure 12(e). *Id.* Snap opposes the motion. ECF No. 39. The court considers only the motion to dismiss and the ripeness argument here.

## LEGAL STANDARD

"*Younger* provides that a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (internal quotation marks omitted).

Defendants filed the instant motion under Rule 12(b)(1) and, alternatively, "under Rule 12(b)(6) only insofar as [the] [c]ourt determines that the *Younger* abstention [doctrine] does not implicate the [c]ourt's subject matter jurisdiction." ECF No. 36 at 9 n.4. As the Tenth Circuit itself has noted, it has not been clear on this issue. *See Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 n.32 (10th Cir. 2023). Nevertheless, "[c]onsistent with the Supreme Court's observation" in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1988), the Tenth Circuit "routinely analyze[s] *Younger* abstention in the context of Rule 12(b)(1)." *Serna v. City of Colorado Springs*, No. 24-1149, 2025 WL 471224, at *2 (10th Cir. Feb. 12, 2025). The court will do the same here.

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the court lacks subject matter jurisdiction. "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

## ANALYSIS

### I.  *Younger* abstention

"*Younger* provides that a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in 'certain instances in which the prospect of undue interference with state proceedings counsels against federal relief.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 669–70 (10th Cir. 2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). The circumstances that fit into the *Younger* doctrine, however, are "exceptional." *Sprint*, 571 U.S. at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

The Tenth Circuit has recently reaffirmed the narrow applicability of the doctrine to the categories outlined in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013). As it stated, "the possibility of *Younger* abstention is triggered *only when* the state proceeding falls into one of the following categories: '(1) state criminal prosecutions, (2) civil enforcement proceedings [that take on a quasi-criminal shape], and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function.'" *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (quoting *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023)). Thus, "[i]f and only if the state court proceeding falls within one of the enumerated 'exceptional' types of cases, *may* courts analyze the propriety of abstention under the so-called *Middlesex* conditions. Those conditions ask whether there exists '(1) an ongoing state . . . proceeding, (2) the presence of an important state interest, and (3) an adequate opportunity to raise federal claims in the state proceedings.'" *Travelers*, 98 F.4th at 1317 (quoting *Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245, 1256 (10th Cir. 2022)).

When these *Middlesex* conditions are met, "abstention is mandatory unless one of three exceptions applies: the prosecution was '(1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate.'" *Winn v. Cook*, 945 F.3d 1253, 1258–59 (10th Cir. 2019) (quoting *Phelps v. Hamilton*, 59 F.3d 1058, 1063–64 (10th Cir. 1995)). Working through the *Sprint* categories, the *Middlesex* conditions, and the narrow exceptions to *Younger* abstention, the court finds abstention is required.

### A.    The *Sprint* Categories

As a threshold matter, the court must first determine if the relevant state court proceeding falls into one of the *Sprint* categories. *Travelers*, 98 F.4th at 1317 ("Only after the court determines the case falls within [one of] the three categories of exceptional cases do the *Middlesex* factors come into play.").

Neither side argues that the state court proceeding here falls into the first or third *Sprint* categories. As to the first category, the state proceeding is clearly not a criminal prosecution. As to the third category, the current state court proceeding does not involve an order "uniquely in furtherance of the state [court's] ability to further [its] judicial functions." *Sprint*, 571 U.S. at 78 (quoting *New Orleans Pub. Serv., Inc.*, 491 U.S. at 368).

The court thus focuses on the applicability of the second *Sprint* category—certain civil enforcement proceedings. *Sprint*, 571 U.S. at 78. The *Sprint* Court defined the contours of the category as concerning "state proceedings 'akin to a criminal prosecution' in 'important respects.'" *Id.* at 79. "Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.,* the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are

commonly involved, often culminating in the filing of a formal complaint or charges."[3] *Id.* at 79–80 (internal citations removed).

Snap argues that a "civil consumer protection lawsuit for money damages is not the type of state court lawsuit that qualifies for *Younger* abstention." ECF No. 39 at 8. It states that Defendants have not shown that the proceeding is of criminal or quasi-criminal character. Rather, it argues that the "civil consumer protection lawsuit" here seeks relief that is principally "akin to the type of relief that private civil plaintiffs can seek under Utah's consumer protection laws." ECF No. 39 at 8–11.

But as Defendants argue in their reply brief, the underlying state proceeding here fits squarely into the second *Sprint* category. *See* ECF No. 40. The suit was brought by the State of Utah in its sovereign capacity. ECF No. 35 at 1 ("The Division of Consumer Protection . . . and the State of Utah, acting through the Attorney General of Utah, and Derek E. Brown, in his official capacity as the Utah Attorney General, bring this action against Defendant Snap Inc. . . . ."). It was preceded by a referral from the Utah Division of Consumer Protection related to Snap's practices. ECF No. 1-2 at 2. In other words, the state case was preceded by an investigation by the State of Utah. ECF No. 36 at 4 ("In 2023, DCP issued an investigative subpoena to Snap . . . ."). This investigatory process culminated in the formal pre-suit Notice Letter and finally the formal complaint in the state court case. Finally, the state case was brought to sanction Snap for an alleged wrongful act. In addition to injunctive relief, equitable accounting, restitution and actual damages, and attorney's fees and costs, the State of Utah seeks civil penalties pursuant to the UCSPA and

---

[3] The *Sprint* Court noted that an inquiry into whether the state action was "coercive" or "remedial" is not "necessary or inevitably helpful." *Sprint*, 571 U.S. at 80 n.6.

the UCPA. ECF No. 35 at 88.

The parties offer competing views on how other courts have applied *Younger* abstention to similar cases. Snap asks the court to follow the Second Circuit's lead in *Philip Morris v. Blumenthal*, in which the Second Circuit rejected abstention. 123 F.3d 103, 106–07 (2d Cir. 1997). Defendants, in contrast, argue that *Philip Morris* is not on point, instead urging the court to follow the Ninth Circuit's lead in *Bristol-Myers Squibb Co. v. Connors*, in which the Ninth Circuit found abstention appropriate. 979 F.3d 732, 738 (9th Cir. 2020).

While neither case is binding on this court, *Bristol-Myers Squibb* is far more relevant (and contemporary) to the case at hand. In *Bristol-Myers Squibb*, two private law firms conducted an initial investigation into several pharmaceutical companies, eventually bringing a state-court action on behalf of the State of Hawai'i on a contingency-fee basis. *Id.* at 735. The companies then sought an injunction against the state proceeding, which the district court denied. *Id.* The Ninth Circuit affirmed the district court and its conclusion that the state proceeding fit into the second *Sprint* category, as "a civil enforcement action brought by the Attorney General seeking civil penalties, injunctive relief, and damages for unfair and deceptive acts in violation of Hawai'i consumer protection law." *Id.* It held that when considering whether an action is entitled to *Younger* abstention, courts usually look to the general class of cases of which the state proceeding is a member, rather than a case-specific analysis. *Id.* at 737–38. In that case, the fact that the state action was brought under a statute that punishes those who engage in deceptive acts in commerce and that the State sought civil penalties and punitive damages to sanction the companies led the Ninth Circuit to hold that the action "fit[] comfortably within the class of cases described in *Sprint* . . . ." *Id.* at 738.

In contrast, in *Philip Morris*, several tobacco companies sought to enjoin Connecticut from

9

filing suit after the Connecticut Attorney General widely publicized his intention of doing so to recover "millions paid out by Connecticut under its Medicaid and general medical assistance programs for tobacco-related illnesses." 123 F.3d at 104. Three weeks later, the State initiated its suit, seeking a number of remedies under the state antitrust law, the Connecticut Unfair Trade Practices Act, and common law. *Id.* at 104–05. The Ninth Circuit declined to abstain under *Younger*, finding that the federal action did not implicate an important state interest. *Id.* at 105. It found that the primary aim of the state case was to obtain reimbursement from the tobacco industry, rather than to eradicate unfair business practices. *Id.* at 106. Further, the Ninth Circuit stated that the state suit could not be characterized as a sovereign enforcement proceeding because it was essentially a suit for money damages, available to private parties as well. *Id.* at 106–07.

The instant case does not involve a state suit primarily seeking reimbursement for prior expenditures, as in *Philip Morris*. Rather, similar to *Bristol-Myers Squibb*, it involves a civil enforcement action, filed after an investigation, seeking civil penalties (among other remedies) that are unavailable to private parties and that would sanction a party for allegedly violating a state's regulatory regime—here, Utah's consumer privacy act and sales practices act. *See* Utah Code §§ 13-11-17 (remedies for UCSPA enforcement actions brought by DCP rather than private parties); 13-61-402 (remedies for violations of the UCPA, which has no private right of action). Thus, the case at hand "fits comfortably" into the second *Sprint* category. *See Bristol-Myers Squibb Co.*, 979 F.3d at 738.

### B.   Ongoing State Proceeding

Moving on to the *Middlesex* factors, "*Younger* requires federal courts to refrain from ruling when it could interfere with ongoing state proceedings." *Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 393 (10th Cir. 2016). The court specifically considers whether the state proceeding was

ongoing "before any proceedings of substance on the merits had taken place in the federal court . . . ." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *see Credit One Bank, N.A. v. Hestrin*, 60 F.4th 1220, 1225 (9th Cir. 2023) ("Put another way, 'the commencement of state proceedings only ceases to require federal abstention after the federal court proceedings have moved beyond an embryonic stage.'")

As an initial matter, the parties disagree on when the state action began. Defendants argue that the state proceeding began not on June 30, 2025, when the state case was filed, but on May 22, 2025, the day the state sent its pre-suit notice letter. ECF No. 26 at 11–12. They cite to *Amanatullah v. Colorado Bd. of Med. Examiners*, which held that the relevant state proceedings in the case began when a 30-day notice letter was sent to the federal plaintiff, rather than when the formal state complaint was filed. 187 F.3d 1160, 1163 (10th Cir. 1999). Snap disagrees, arguing that the mere threat of state enforcement does not qualify for federal abstention. *See* ECF No. 39 at 5 n.6 (citing *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 64 (9th Cir. 2024)).

The court need not determine whether the pre-suit notice letter or the formal complaint initiated the state proceedings here because, in either case, no federal proceedings of substance had yet taken place. By the time the state case was filed, the only federal proceeding to have taken place was a denial of Snap's ex parte motion for a temporary restraining order. ECF No. 12. This court's ruling there did not engage the merits. *See* ECF No. 12 at 4 (declining to consider the merits of the complex First Amendment claims absent adversarial briefing). Indeed, many courts have recognized that the denial of a TRO is not considered a proceeding of substance for *Younger* abstention. *Hestrin*, 60 F.4th at 1225; *see Hicks*, 422 U.S. at 338, 349.

Snap responds that relevant, substantive federal proceedings had, in fact, taken place before the state case was filed. It argues that the relevant federal proceedings here include not just the

11

instant case but also *NetChoice v. Reyes*. 748 F. Supp. 3d 1105 (D. Utah 2024). In Snap's view, "the federal courts are more than 20 months into litigation" over the State's "effort to regulate Snap"; allowing abstention in this case would be "an invitation for state actors to opt out of ongoing federal litigation simply by filing a new state court matter covering the same substance." ECF No. 39 at 5–8.

But this argument falls flat. *Reyes* and the instant case are not the same cases: they have different parties,[4] involve different statutes, and, most importantly, differ significantly in substance. Snap asserts the same issues are involved, namely the constitutionality of the state's age verification requirements and age-based restrictions on Snap. ECF No. 39 at 7. But the underlying state proceeding, which Snap's instant action seeks to enjoin, deals with whether Snap has engaged in unconscionable trade practices (ECF No. 35 ¶ 252), has engaged in misrepresentations and deceptive acts (¶ 267), or has failed to provide consumers with clear notice or ability to opt out of sensitive data collection (¶ 276). While the basis of these claims deals primarily with children, the state is not attempting to enforce the same age verification process or special rules of the 2024 Social Media Act that was enjoined in *Reyes*.

Further, the underlying constitutional analysis of Judge Shelby's preliminary injunction order in *Reyes* is inapplicable to the state case at hand. Judge Shelby singularly focused on how the 2024 Social Media Act's "Central Coverage Definition" drew facially content-based distinctions between subjects of speech, thus requiring the court to apply strict scrutiny. 748 F. Supp. 3d at 1122. That standard of review is likely not implicated in the instant state court case,

---

[4] The court in *Reyes* was clear that NetChoice was the plaintiff in the case, not its members. *See Reyes*, 748 F. Supp. 3d at 1111.

which deals with statutes that do not employ the same facially content-based distinctions. The analysis in the state court case will deal with distinct constitutional questions wholly separate from *Reyes*.

More frankly stated, it may well be likely that the same originating concern for the welfare of Utahan children prompted both the 2024 Social Media Act and the underlying state proceeding here. But just because they may share the same motivation does not mean they are the same federal proceeding or that they even raise the same claims. Thus, here, there is an ongoing state proceeding that satisfies the first *Middlesex* condition.

### C.      Important State Interest

When courts "inquire into the substantiality of the State's interest in its [proceedings, courts] do not look narrowly to its interest in the outcome of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what [courts] look to is the importance of the generic proceedings to the State." *New Orleans Pub. Serv., Inc.*, 491 U.S. at 365 (1989).

Defendants argue that Utah has a strong interest in vindicating its consumer protection laws. ECF No. 36 at 12. This is undoubtedly true, and numerous courts have similarly affirmed that states have an interest in protecting their consumers and enforcing their consumer protection laws. *See, e.g.*, *Bristol-Myers Squibb Co. v. Connors*, 444 F. Supp. 3d 1231, 1237–38 (D. Haw. Mar. 16, 2020), *aff'd*, 979 F.3d 732 (9th Cir. 2020) (collecting cases); *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 410 (S.D.N.Y. 2014) (collecting cases); *Bluehippo Funding, LLC v. McGraw*, No. CIV.A. 2:07-0399, 2007 WL 6216559, at *12 (S.D.W. Va. Oct. 25, 2007) (collecting cases). The second *Middlesex* condition is met.

### D.      Adequate Opportunity to Raise Federal Claims

The court next considers whether Snap, as the federal plaintiff, has an adequate opportunity to present its federal claims in state court. "So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).

This court is no better positioned than a state court to decide the merits of Snap's constitutional claims. In our system of federalism, state courts have concurrent jurisdiction with federal courts over most federal claims, including those arising under the U.S. Constitution.[5] This means both state and federal courts can hear such cases. "'[U]nless state law clearly bars the interposition of the federal statutory and constitutional claims,' a plaintiff typically has 'an adequate opportunity to raise federal claims in state court.'" *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (quoting *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)). There is no such bar here.

Further, under the Supremacy Clause, state courts are not only permitted but obligated to enforce federal constitutional rights. There is no reason to doubt the state court's ability to do so here. *Middlesex Cnty*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.").

Accordingly, all three *Middlesex* requirements have been met. "[A]bstention is mandatory

---

[5] The converse is not true. This court would not have jurisdiction over the action pending in state court, which presents exclusively state-law claims. ECF No. 40 at 14.

14

unless one of three exceptions applies: the prosecution was '(1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate.'" *Winn v*, 945 F.3d at 1258–59 (quoting *Phelps*, 59 F.3d at 1063–64). As Snap does not allege that the second potential exception applies, the court considers only whether the enforcement action was commenced in bad faith or is related to any other extraordinary circumstance.

### 1)    Bad Faith

The Tenth Circuit has considered three factors in determining whether an action is commenced in bad faith or to harass: "(1) whether it was frivolous or undertaken with no reasonably objective hope of success, (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights, and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Phelps*, 59 F.3d at 1064–65 (internal citations removed). The Tenth Circuit has also been clear that a federal plaintiff "has a heavy burden of proof in order to overcome the bar of *Younger* abstention. Under *Younger,* intervention cannot be predicated on mere allegations; rather, the federal plaintiff must *prove* bad faith or harassment before intervention is warranted." *Id.* at 1066.

Snap asserts that the state's lawsuit was brought in bad faith against and to harass Snap, but it has not fulfilled its burden in proving either. Snap first argues that Defendants' claims have no reasonably objective hope of success because they are trying to impose the same age-based restrictions and age verification requirements at issue in *Reyes*. As already noted, *Reyes* and this case are not the same and deal with different substance. It is not clear that there is no hope of

success for the Defendants.

Second, Snap argues that the state action was initiated in retaliation for Snap's defense of its constitutional rights in *Reyes*. Yet even Snap acknowledges the state's investigation into Snap began more than a year prior to the *Reyes* litigation. ECF No. 39 at 14. The state did eventually bring suit against Snap after the *Reyes* case had progressed to the preliminary injunction stage, but this does not resemble the type of prosecution that has been found to demonstrate bad faith. *See, e.g.*, *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1091–96 (5th Cir. 2023). In *Babin*, for instance, the Fifth Circuit affirmed a finding of bad faith in a case where a state prosecutor "multiplied [a] first indictment into four" after Netflix asserted a First Amendment claim through a pretrial writ of habeas corpus. *Id.* at 1087–88. Here, in contrast, the state initiated a single civil enforcement action that, while filed after a loss at the preliminary injunction stage in a separate case, was in part based on a years-long investigation under a different statute and that preceded the other case. Beyond the general timeline of events, Snap offers no evidence of bad faith.

### 2)    Extraordinary Circumstances

Like the bad faith exception, the extraordinary circumstance exception "only provide[s] for a 'very narrow gate for federal intervention.'" *Phelps*, 59 F.3d at 1064 (quoting *Arkebauer v. Kiley*, 985 F.2d 1351, 1358 (7th Cir.1993)). For this exception to apply, there must be a threat of irreparable injury "to the plaintiff's federally protected rights . . . that cannot be eliminated by his defense against a single criminal prosecution." *Winn*, 945 F.3d at 1259 (quoting *Younger*, 401 U.S. at 46). "If there is no injury 'other than that incidental to every criminal proceeding brought lawfully and in good faith,' there is no irreparable injury." *Winn*, 945 F.3d at 1259.

Snap argues that its irreparable injury—its alleged deprivation of constitutional rights—will not be eliminated by prevailing in the present state court lawsuit "given Defendants'

willingness to sidestep *Reyes*" and the risk of "repeated rounds of harassing litigation." ECF No. 39 at 17. It also argues the alleged circumvention itself is an extraordinary circumstance that "erases the equities motivating *Younger* abstention." *Id.* The court, however, does not find the underlying state suit to be circumventing the *Reyes* preliminary injunction (which dealt with a different statute). Moreover, while Snap claims there will be rounds of repeated litigation instigated by the Defendants, there is no evidence to back that claim. After all, this is Defendants' *first* court action against Snap. There is, thus, no extraordinary circumstance warranting federal intervention.

## II.    Ripeness

Defendants next argue that any remaining challenge Snap brings is not yet ripe for review. ECF No. 36 at 17. Snap, in response, argues that its request to enjoin future investigations and litigation involving the types of features, issues, and conduct described in its complaint (other than what is directly at issue in the Defendants' state court complaint) is ripe for review. ECF No. 39 at 18.

"The purpose of the ripeness doctrine is to prevent the premature adjudication of abstract claims." *Tex. Brine Co. v. Occidental Chem. Corp.*, 879 F.3d 1224, 1229 (10th Cir. 2018). "Application of [the prudential ripeness] doctrine turns on two factors: (1) 'the fitness of the issue for judicial review,' and (2) 'the hardship to the parties from withholding review.'" *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). Whether an issue is fit for judicial review depends on whether "the determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *Id.* (quoting *United States v. Ford*, 882 F.3d 1279, 1283 (10th Cir. 2018)). In analyzing the hardship to the parties from withholding review, the court considers whether the parties face "a direct and immediate dilemma" from the challenged conduct. *United States v. Bennett*, 823 F.3d 1316, 1328 (10th Cir. 2016). "A claim is not ripe for adjudication

17

if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81 (1985)).

Here, the court finds that any remaining challenge Snap brings is not ripe. Snap is challenging a speculative future injury: the remaining claims require future state action that is by no means guaranteed. Much of Snap's ripeness argument is predicated on its view that the state's actions are part of a harassment campaign that is bound to continue. Snap, however, has not presented a sufficient basis for the court to adopt that view. There is no indication that the state will indeed initiate a later investigation or suit, nor is there any indication that any future investigation or suit would be pretext for harassment. Snap faces no immediate dilemma, and the lack of identifiable future agency action or "credible threat of enforcement" belies Snap's argument that it faces a chilling effect that justifies judicial review. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014). Snap cannot leverage the existence of one civil enforcement action on narrow grounds to a wholesale bar on any future agency action, even if the alleged chilling effect deals with the freedom of speech. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 50 (2021) ("[T]his Court has always required proof of a more concrete injury and compliance with traditional rules of equitable practice. The Court has consistently applied these requirements whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." (internal citations removed)).

Snap argues that the sole question presented is a legal one: having been enjoined from taking action under a facially unconstitutional statute, can Defendants take the same action under less narrowly tailored statutes? But this framing brushes over many lingering questions. It remains

unclear what future "action" is at issue, what statutes would be at play,[6] or what conduct of Snap's would be under scrutiny. The merits necessarily turn on further development of the factual record. This court declines to rule, without the benefit of even a skeletal framework of the issues to work with, that *any* future investigation or litigation by the state based on any number of statutes into a sprawling slate of Snap's features, issues, and conduct is necessarily unconstitutional.

**CONCLUSION AND ORDER**

For the reasons above, Defendants' motion to dismiss pursuant to 12(b)(1) is **GRANTED**. The court declines to exercise jurisdiction over Snap's claims and will dismiss them without prejudice. Given the abstention, the court need not consider the Defendants' requests for a stay of the proceedings and for a more definite statement under Rule 12(e).

It is further ORDERED that Snap's Motion for Preliminary Injunction is **DENIED** as moot. ECF No. 26.

Signed March 24, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge

---

[6] Snap words its requests for preliminary relief broadly. In its complaint, it asks for preliminary relief "precluding any Defendants . . . from filing suit against Snap, or launching a new investigation into Snap" for various reasons that are listed. ECF No. 1 at 38–39. Defendants, in contrast, at first interpreted Snap's lawsuit as seeking to prevent the Defendants from bringing suit or initiating a new investigation under UCPA or UCSPA. ECF No. 36 at 1, 6, 18. Snap, however, has not limited its request to those two statutes. *See* ECF 39 at 20. In fact, it explicitly argues otherwise, stating that compared to Snap's preliminary injunction request, "Defendants' present state court allegations, in contrast, are narrower, involving claims that Snap violated two state statutes, the UCSPA and the UCPA." ECF No. 39 at 21.